MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

ERIC M. ACKER (CA SBN 135805)
EAcker@mofo.com
CHRISTIAN G. ANDREU-VON EUW (CA SBN 265360)
christian@mofo.com
MARY PRENDERGAST (CA SBN 272737)
MPrendergast@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, California 92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125

Attorneys for Defendant
PROPERTY SOLUTIONS INTERNATIONAL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YARDI SYSTEMS, INC.,<br>Plaintiff,<br>v.<br>PROPERTY SOLUTIONS INTERNATIONAL, INC.,<br>Defendant. | Case No. 2:13-CV-07764-FMO-CW<br>**DEFENDANT PROPERTY SOLUTIONS INTERNATIONAL, INC.'S ANSWER AND COUNTERCLAIMS TO YARDI SYSTEMS, INC.'S FIRST AMENDED COMPLAINT**<br>**DEMAND FOR JURY TRIAL**<br>**Hon. Fernando M. Olguin** |

Defendant Property Solutions International Inc. ("Property Solutions") hereby submits this Answer, Affirmative Defenses, and Counterclaims to the First Amended Complaint ("Complaint") filed by Yardi Systems Inc. ("Yardi"). Except as expressly admitted below, Property Solution denies each and every allegation of the Complaint.

**INTRODUCTION**

1. Denied.

2. Denied.

3. Property Solutions admits that Yardi provided Property Solutions with technical support and assistance, including providing access to screen shots of Yardi's Voyager software and information about Yardi's databases, for the benefit of the parties' mutual clients. The remaining allegations of paragraph 3 are denied.

4. Denied.

5. Property Solutions admits that Yardi has filed an action alleging copyright infringement and misappropriation of trade secrets. The remaining allegations of paragraph 5 are denied.

**PARTIES**

6. On information and belief, Property Solutions admits that Yardi is a California corporation with its principal place of business at 430 South Fairview Avenue, Santa Barbara, California 93117.

7. Admitted.

**JURISDICTION AND VENUE**

8. Admitted.

9. Denied.

10. Property Solutions admits that the parties are citizens of different states. Except as expressly admitted, Property Solutions is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 10, and on that basis denies them.

11. Denied.

a. Denied.

b. Denied.

c. Denied.

d. Denied.

e. Denied.

f. Denied.

g. Denied.

12. Property Solutions admits that a Non-Disclosure Agreement signed in 2006 by Property Solutions states that "[A]ny disputes related to or arising out of the Agreement shall be brought in a state court of competent jurisdiction located in the City of Santa Barbara, CA, or the Federal court of competent jurisdiction closest to the City of Santa Barbara, CA and the parties hereby consent to the personal jurisdiction and venue of the aforementioned courts."

13. Denied.

## GENERAL ALLEGATIONS

14. Property Solutions admits that Yardi purports to develop, market, and sell database and application software for the property management industry. Property Solutions is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 14, and on that basis denies them.

15. Property Solutions is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 15, and on that basis denies them.

16. Property Solutions is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 16, and on that basis denies them.

17. Property Solutions admits that there are third party companies that develop and market specialized add-on products and service modules for the property management industry, which products and services are intended to interface with the Voyager software database. Property Solutions also admits that Yardi has a long history of working cooperatively with these third party providers to develop and improve interfaces that will best serve the parties' mutual clients. The remaining allegations of paragraph 17 are denied.

18. Property Solutions admits that it is a developer of add-on products and service modules that interface with the Voyager software database.

19. Property Solutions admits that, on or about February 23, 2006, Property Solutions signed a Non-Disclosure Agreement. The remaining allegations of paragraph 19 call for a legal conclusion to which no response is required.

20. Property Solutions admits that the 2006 NDA defined Confidential Information to include "all technical and non-technical information either party discloses or provides to the other," including "information regarding copyrighted . . . or trade secret material or other intellectual property," "software programs," "database architecture," "user manuals," "software documentation, ideas . . . know-how, techniques, schema . . . algorithms," and "any information related to current, future, and proposed software, products and services." Property Solutions further admits that the 2006 NDA states that each party "acknowledges that the other party's proprietary software programs, if any, are valuable Confidential Information and agrees that they will not modify, reverse engineer, duplicate, simulate, decompile, create derivative works from, or disassemble the software programs without the other party's prior written consent."

21. Property Solutions admits that the 2006 NDA states: "Yardi and Company wish to openly discuss a possible future business relationship. In furtherance of that objective, the parties may disclose certain Confidential Information (defined below) relating to their businesses subject to the terms and

conditions of this Agreement and solely for the purpose of evaluating the potential relationship", "The parties agree to use Confidential Information solely for the purpose of evaluating or pursuing a business relationship and for no other purpose", and "In no event shall a party use the other party's Confidential Information to the detriment of or in competition with the other party." Property Solutions denies the remaining allegations of Paragraph 21.

22. Property Solutions admits that the 2006 NDA states: "This Agreement shall remain in full force and effect until terminated by a party. Either party may terminate this Agreement with or without cause upon thirty (30) days written notice to the other party" and "Upon any termination or expiration of this Agreement, or upon the request of the other party, each party shall promptly return all documents and other tangible Confidential Information, electronic or otherwise, in their possession and permanently delete any Confidential Information stored by that party in electronic form." The remaining allegations of paragraph 22 call for a legal conclusion to which no response is required.

23. Property Solutions admits that rather than using Yardi's standard interfaces, it has developed its own custom interface that allows interoperability between the Voyager software and Property Solutions' products.

24. Property Solutions admits that Yardi provided technical support to Property Solutions during the development of Property Solutions' custom interfaces. The remaining allegations of paragraph 24 are denied.

25. Denied.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. Property Solutions admits that Property Solutions and Yardi had a meeting in Santa Barbara, California on February 7, 2012 and had a subsequent

phone call on February 13, 2012. The remaining allegations of paragraph 30 are denied.

31. Property Solutions admits that Property Solutions and Yardi had a meeting on February 7, 2012. The remaining allegations of paragraph 31 are denied.

32. Property Solutions admits that Yardi followed these meetings with a letter to the Chief Executive Officer and President of Property Solutions, in which Yardi asked Property Solutions to confirm that it did not have a copy of the Voyager software in its possession or otherwise have access to the Voyager software, that its personnel and contractors were not logging into the Voyager software for any purpose, and that it had no Yardi technical manuals or user guides. Property Solutions also admits that Yardi demanded that Property Solutions return any confidential information in its possession to Yardi. The remaining allegations of paragraph 32 are denied.

33. Property Solutions admits that it responded to Yardi's inquiry in a letter dated February 23, 2012 and stated that it did not have any copies of the Voyager software in its possession and that it is not accessing the Voyager software. Property Solutions admits that it did not assert it had never had such access. The remaining allegations of paragraph 33 are denied.

34. Property Solutions admits that Yardi demanded that Property Solutions cease and desist from using Yardi's intellectual property and explain to Yardi how such information has been used, and that Property Solutions denied having any such access. The remaining allegations of paragraph 34 are denied.

35. Property Solutions admits that it at one time had a copy of the Voyager software. The remaining allegations of paragraph 35 are denied.

36. Property Solutions admits that in July 2012, Property Solutions sent an email to a mutual client located in California requesting that the client disclose the Yardi database tables that can be used by Property Solutions to identify a lease

renewal offer or to tell Yardi that a renewal offer has been accepted. The remaining allegations of paragraph 36 are denied.

37. Property Solutions admits that it developed a custom interface for its lease renewal product intended to interface with the Voyager software database. The remaining allegations of paragraph 37 are denied.

38. Property Solutions admits that it continues to use its own custom interfaces and has not transitioned to Yardi's standard interfaces. The remaining allegations of paragraph 38 are denied.

39. Property Solutions admits that before this lawsuit was filed, Property Solutions asked Yardi to disclose its evidence that Property Solutions had illegally obtained a copy of the Voyager software. Property Solutions further admits that Yardi informed Property Solutions' counsel that a copy of the Voyager software had accessed the Yardi network from a Property Solutions computer, and that Yardi was told that Property Solutions would get back to Yardi with a response. The remaining allegations of paragraph 39 are denied.

40. Property Solutions admits that Property Solutions has now released a property management system called "Entrata." The remaining allegations of paragraph 29 are denied.

41. Denied.

**FIRST CLAIM FOR RELIEF**
**(Copyright Infringement – 17 U.S.C. § 101 et seq.)**

42. Property Solutions incorporates by reference its answer to paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43. Property Solutions is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 43, and on that basis denies them.

44. Property Solutions is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 44, and on that basis denies them.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

## SECOND CLAIM FOR RELIEF
## (Misappropriation of Trade Secrets – Cal. Civ. Code §§ 3426-3426.11)

53. Property Solutions incorporates by reference its answer to paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54. Denied.

55. Property Solutions is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 55, and on that basis denies them.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

## THIRD CLAIM FOR RELIEF
## (Intentional Interference with Contractual Relations)

62. Property Solutions incorporates by reference its answer to paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63.     Property Solutions is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 52, and on that basis denies them.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Contract – Express Contract)**

68.     Property Solutions incorporates by reference its answer to paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.     Property Solutions admits that it signed the 2006 NDA.  The remaining allegations of paragraph 19 call for a legal conclusion to which no response is required.

70.     Denied.

71.     Denied.

72.     Denied.

73.     Denied.

**FIFTH CLAIM FOR RELIEF**
**(Breach of Contract – Implied-in-Fact Contract)**

74.     Property Solutions incorporates by reference its answer to paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75.     Denied.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Denied.

## SIXTH CLAIM FOR RELIEF
**(Violation of Digital Millennium Copyright Act – 17 U.S.C. § 1201)**

80. Property Solutions incorporates by reference its answer to paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

88. Denied.

## PRAYER FOR RELIEF

Property Solutions denies that Yardi is entitled to any of the relief requested in the Prayer for Relief.

## AFFIRMATIVE DEFENSES

Without admitting or implying that Property Solutions bears the burden of proof as to any of them, Property Solutions asserts the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Claim)**

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
**(Waiver)**

Yardi's claims are barred due to waiver.

### THIRD AFFIRMATIVE DEFENSE
**(Laches)**

Because Yardi has inexcusably and unreasonably delayed the filing of its Complaint, causing substantial prejudice to Property Solutions, Yardi's claims are barred, in whole or in part, by the doctrine of laches.

**FOURTH AFFIRMATIVE DEFENSE**
**(Estoppel)**

Yardi's claims are barred, in whole or in part, by the equitable doctrine of estoppel.

**FIFTH AFFIRMATIVE DEFENSE**
**(Comparative Fault)**

To the extent that Yardi did sustain any damages, which Property Solutions denies, such damages were caused, in whole or in part, by the comparative fault of Yardi and/or third parties, which thus bars Yardi's recovery for said damages or diminishes such recovery by the amount of fault attributable to Yardi and/or those third parties.

**SIXTH AFFIRMATIVE DEFENSE**
**(Failure to Mitigate)**

To the extent that Yardi did sustain any damages, which Property Solutions denies, such damages were caused, in whole or in part, by Yardi's failure to mitigate any damages it may have suffered, which failure to mitigate bars and/or diminishes Yardi's right to any relief against Property Solutions.

**SEVENTH AFFIRMATIVE DEFENSE**
**(No Causation)**

To the extent Yardi has suffered any injury or damage, which Property Solutions denies, such injury or damage was not proximately caused by any conduct or inaction of Property Solutions, or was not foreseeable, or both.

**EIGHTH AFFIRMATIVE DEFENSE**
**(Unjust Enrichment)**

Yardi's claims are barred because Yardi was enriched by the Property Solutions products Yardi now alleges incorporated its allegedly copyrightable materials and alleged trade secrets.

**NINTH AFFIRMATIVE DEFENSE**
**(Privilege)**

Yardi's claims are barred due to absolute and conditional privileges enjoyed by Property Solutions and because the alleged actions by Property Solutions were

taken in good faith and were at all times reasonable, privileged, and justified.

**TENTH AFFIRMATIVE DEFENSE**
**(License)**

Yardi is estopped from asserting the claims alleged against Property Solutions due to an express and/or implied license. For example, Yardi has been aware of, and benefited from, the conduct it alleges since at least 2006. Furthermore, on information and belief, Yardi has signed contract(s) with mutual customer(s) that are intended to benefit Property Solutions by expressly allowing those customers to use Property Solutions interfaces to connect to Yardi software.

**ELEVENTH AFFIRMATIVE DEFENSE**
**(Fair Use)**

Yardi's claims are barred, in whole or in part, by the doctrines of fair use, nominative fair use, and/or descriptive use.

**TWELFTH AFFIRMATIVE DEFENSE**
**(Noninfringement)**

Yardi's claim for copyright infringement is barred because Property Solutions has not infringed any applicable copyrights.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**(Copyright Misuse)**

Yardi's claims are barred by the doctrine of copyright misuse.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**(Merger)**

Yardi's claims are barred by the merger doctrine.

**FIFTEENTH AFFIRMATIVE DEFENSE**
**(No Substantial Similarity)**

Yardi's claims are barred because Property Solutions' products are not substantially similar to any of Yardi's allegedly copyrightable works.

**SIXTEENTH AFFIRMATIVE DEFENSE**
**(Failure to Identify Trade Secrets)**

Yardi's claim for misappropriation of trade secrets is barred, in whole or in part, because Yardi has failed to sufficiently identify any purported trade secrets as set forth in the Uniform Trade Secrets Act or any other statutory or common law provisions.

**SEVENTEENTH AFFIRMATIVE DEFENSE**
**(Independent Development)**

Yardi's claims are barred because Property Solutions did not rely on any of Yardi's alleged trade secrets and independently developed its products, which are demonstrably different from Yardi's products.

**EIGHTEENTH AFFIRMATIVE DEFENSE**
**(Readily Ascertainable)**

Yardi's claims are barred because the alleged trade secrets are readily ascertainable.

**NINETEENTH AFFIRMATIVE DEFENSE**
**(Inadequate Efforts to Maintain Secrecy)**

Yardi's claims are barred because Yardi failed to make adequate efforts to maintain the secrecy of the alleged trade secrets.

**TWENTIETH AFFIRMATIVE DEFENSE**
**(No Misappropriation)**

Yardi's claim for misappropriation of trade secrets is barred because even if any information disclosed to Property Solutions would be considered a trade secret, Property Solutions has not committed any acts that would constitute misappropriation of such information.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**
**(Consent)**

Yardi's claims are barred, in whole or in part, because Yardi, through its knowing conduct, authorized and consented to the disclosure of alleged trade secrets to Property Solutions and to their use.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**
**(Unclean Hands)**

Yardi's claims are barred, in whole or in part, by the doctrine of unclean hands.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**
**(Statute of Limitations)**

Yardi's claims are barred by applicable statutes of limitations.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**
**(No Circumvention of Technological Measures)**

Yardi's claim for violation of the Digital Millennium Copyright Act is barred because Property Solutions did not circumvent any technological measures.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**
**(Technological Measures Do Not Effectively Control Access)**

Yardi's claim for violation of the Digital Millennium Copyright Act is barred because the alleged technological measures Property Solutions is accused of circumventing do not effectively control access to copyrighted works.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**
**(No Access to Copyrighted Work)**

Yardi's claim for violation of the Digital Millennium Copyright Act is barred because Property Solutions did not access any copyrighted works through the alleged circumvention.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**
**(Legitimate Reverse Engineering)**

Yardi's claim for violation of the Digital Millennium Copyright Act is barred because the alleged conduct constitutes legitimate reverse engineering.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**
**(Failure of Condition Precedent)**

Yardi's express contract claim is barred because the alleged contract only applies to disclosures made to discuss a possible future business relationship and disclosures made for other purposes are not subject to the terms of the contract.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**
**(Lack of Certainty)**

To the extent any implied contract existed between Yardi and Property Solutions, which Property Solutions denies, the terms of such contract are so indefinite, vague, and uncertain as to render such contract unenforceable against Property Solutions.

**THIRTIETH AFFIRMATIVE DEFENSE**
**(Lack of Performance)**

To the extent that any implied contract existed between Yardi and Property Solutions, which Property Solutions denies, Yardi failed to perform its contractual duties.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**
**(Statute of Frauds)**

Plaintiff's implied contract claim is barred by the statute of frauds, including provisions contained in Section 1624 of the California Civil Code.

**THIRTY-SECOND AFFIRMATIVE DEFENSE**
**(Ineffective Modification of Written Contract)**

Plaintiff's implied contract claim is barred by reason of the provisions of Section 1698 of the California Civil Code governing the modification of written contracts and the terms of 2006 NDA between the parties.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**
**(Preemption)**

Yardi's claim for Intentional Interference with Contractual Relations is barred because it is preempted.

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**
**(Lack of Valid Copyright Registrations)**

Yardi's claim for copyright infringement is barred because Yardi failed to comply with the registration and deposit requirements of 17 USC §§ 410 *et. seq*.

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**
**(Reservation of Rights)**

Property Solutions' investigation of its defenses is ongoing and Property

Solutions reserves the right to supplement or amend these defenses.

## COUNTERCLAIMS

Defendant and Counterclaimant Property Solutions International Inc. ("Property Solutions") hereby submits these Counterclaims against Yardi Systems, Inc. ("Yardi"):

Property Solutions repeats and incorporates by reference each of the foregoing paragraphs of Property Solutions' Answer and Affirmative Defenses to Yardi's First Amended Complaint.

## PARTIES

Property Solutions is a Delaware corporation with its principal place of business at 2912 Executive Parkway, Suite 100, Lehi, Utah 84043.

Yardi is a California corporation with its principal place of business at 430 South Fairview Avenue, Santa Barbara, California 93117.

## JURISDICTION AND VENUE

This Court has jurisdiction over Property Solutions' counterclaim pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (arising under the Federal Copyright Act), 28 U.S.C. § 1367(a) (supplemental jurisdiction) and 28 U.S.C. §§ 2201(a) and 2202 (declaratory judgment).

89. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(a), in that Yardi resides or may be found in this district and is subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

### A. Property Solutions Background.

90. Property Solutions was founded in 2003 by three students at Brigham Young University with the goal of designing and marketing a new property management software product. The company won Brigham Young University's business plan competition, and went on to take first place in Fortune Small

Business Magazine's MBA Showdown, a national business plan competition among winners of all accredited MBA-sponsored business plan competitions.

91. Property management software generally allows owners and managers of multiple rental and lease units to perform accounting and management tasks, including organizing and storing resident information, processing applications to rent properties, taking maintenance requests from residents, and processing payments. In 2003, Property Solutions designed and planned to market a property management software product initially called Vantage XP, which in 2004 was renamed Resident Works. Shortly after its founding, however, the company decided to change its primary focus to websites and add-ons for existing property management software while continuing to support existing Resident Works customers.

92. In 2004, Property Solutions pioneered the technology that allows residents to pay rent online ("ResidentPay®"). Property Solutions also developed two categories of websites that interfaced with existing property management software. ProspectPortal® is directed at potential residents, and it allows them to review property listings, take virtual tours of properties, and submit rental applications and fees. ResidentPortal™ is directed at current residents, and it allows them to read and post to community message boards, submit maintenance requests, and view event calendars. Each portal can be customized to add additional features or remove features not desired by an individual customer.

93. Property Solutions' portals serve as the access point between an end user (e.g., a resident or prospective resident) and a property management software database. The portals move information to and from the database through a specialized interface in order to fulfill the end user's request. For example, a prospective resident might use a website generated by Property Solutions to view pricing and availability information (pulled from the property management software database) and then fill out a guest card or application. The information provided by

the prospective resident is then transferred back to the third party database through a software interface and stored. When the property manager later searches for that information, the database locates and sends the information back to the Property Solutions portal, where it is displayed. Property Solutions has successfully integrated with several of the largest property management software vendors in the industry, including Yardi.

94. In recent years, Property Solutions has become the only single-platform multi-tenant property management software provider with a comprehensive, cloud-based product suite. Property Solutions offers a wide variety of software capabilities for property managers using platform-as-a-service technology, all of which are stored and administered by Property Solutions rather than locally on a client's server. This cloud-based approach allows users to make use of Property Solutions' software while dramatically lowering their information technology costs.

95. Property Solutions provides customizable interfaces and add-ons for existing property management software, and has also recently expanded its property management product to include accounting, purchasing, and facilities management. That product, previously called Resident Works, was re-branded as Entrata. Property Solutions has grown to nearly 480 employees, and its products currently serve more than 20,000 apartment communities nationwide, including 31 of the National Multi Housing Council (NMHC) Top 50 largest property managers.

**B. Yardi and Property Solutions Collaborated to Develop Interfaces and Specialized Modules for Yardi's Software.**

96. Yardi's property management software historically has been focused on accounting. When Property Solutions was founded, Yardi's software did not include specialized tools that focused on providing services to residents and prospective residents, such as guest cards (in which, for example, a prospective resident provides contact information and details on the type of unit sought), rental

applications, payments, and maintenance request processing. In addition, Yardi's software did not allow much customization for individual customers and property managers. As a result, Yardi encouraged third parties such as Property Solutions to develop specialized modules to interface with its software, and provided the technical support necessary to facilitate those integrations.

97. As early as 2004, Yardi began working with Property Solutions to help Property Solutions develop a Voyager Integration for its ResidentPay® online payment system.

98. In early 2006, Property Solutions sent Yardi contact information for its key developers, corporate information, a proposal to create a ResidentPay® online payment solution for Yardi's software, and a proposal for Yardi integrations with ProspectPortal® and ResidentPortal™.

99. In April 2006, a Yardi executive hosted a call with Property Solutions executives to initiate the parties' formal communications regarding integration. Shortly thereafter, Yardi shipped a copy of its Genesis software to Property Solutions in order to aid Property Solutions in creating its software to be interfaced with the Yardi database. Yardi Genesis is a Windows-based version of Yardi's database software.

100. At that time, Yardi encouraged (but did not require) its third party vendors to develop software that communicated with Yardi's database through a Yardi-designed standard interface. Property Solutions felt that the Yardi standard interface was incapable of facilitating the functionality requested by its customers. But Yardi told Property Solutions it could design its own custom interface, and Property Solutions chose to do so. Property Solutions' custom interface provided several advantages over Yardi's standard interface, including the complex integration of payments, balance inquiries, maintenance requests and unit availability requests. The custom interface allowed information to flow through in real time, rather than be updated in a nightly feed. Property Solutions' portals and

plug-in modules would lose substantial functionality if forced to communicate with a database through the Yardi standard interface.

101. After receiving the Genesis software from Yardi, Property Solutions began work on two kinds of integrations with Yardi's database: (1) self-hosted integrations, in which the Property Solutions-designed interface tool would be located on the customer's server with the customer's Yardi database; and (2) Yardi-hosted integrations, in which the Property Solutions-designed interface tool would be installed on Yardi's servers, which also hosted the customer's database.

102. As part of its development efforts, Property Solutions asked Yardi for a copy of Yardi's Voyager database. Yardi told Property Solutions that Property Solutions could obtain a copy of the database from Yardi's customers. Later, when Property Solutions needed an updated copy of Yardi's database, Property Solutions asked Yardi if it could obtain an updated copy from a Yardi customer. Yardi confirmed that Property Solutions could obtain updated databases for Voyager from Yardi's customers.

103. In mid-2006, Property Solutions created its first self-hosted Yardi integration, which provided the customer with the ability to process payments through Property Solutions' websites. Later that year, Property Solutions developed a beta version of this integration for another mutual customer of Yardi and Property Solutions. On information and belief, Yardi was aware of and approved the integrations Property Solutions developed.

104. In the early years of their collaboration, Yardi encouraged Property Solutions to develop high quality custom integrations with its software databases, and provided Property Solutions with the technical details that allowed Property Solutions to complete those integrations. As Property Solutions worked to perfect its interfaces with Yardi's databases, Yardi developers provided extensive technical support, information about the design of Yardi's software and database, the configuration of its database tables, and the queries that Yardi's software uses to

interact with those tables, which were necessary to allow Property Solutions' software to "talk to" Yardi's databases. In March 2007, Property Solutions developers began working with Yardi developers James Beane and Quan Lee, the director of Yardi's ASP (active server page) division, on testing and troubleshooting Property Solutions' Yardi-hosted integration.

105. In October 2007, Property Solutions wrote to its Yardi sales representative noting that Property Solutions developers "have worked with James Beane and a few other developers at your organization to complete integration for self-hosted clients of yours" that were running Yardi Voyager versions 5.0 and 6.0. However, before Property Solutions could implement its Yardi-hosted integrations, Property Solutions needed Yardi's approval, as the Property Solutions interface tool would need to be installed on Yardi's servers. Thus, in its October 2007 email, Property Solutions provided a list of over a dozen mutual Yardi and Property Solutions customers that were interested in using Yardi-hosted Property Solutions software, and asked when Property Solutions could have its integration approved. Yardi responded that "with your number of clients being so high you should be high on our list" and promised to move the process along.

106. In December 2007, Property Solutions informed Yardi that James Beane at Yardi had tested Property Solutions' web applications and concluded they were ready for launch. Property Solutions also informed Yardi that Property Solutions had a custom interface with a few points of integration that only Property Solutions' custom built web services could accommodate. In a later email, Property Solutions described this as "the custom integration that we built with James [Beane]."

107. In early 2008, Yardi informed Property Solutions that it was now an "approved integration partner" for both self-hosted and Yardi-hosted clients. On information and belief, because Property Solutions' interface utility was actually installed on Yardi's servers at that time, Yardi was aware of Property Solutions'

software and the way in which it interacts with Yardi's software databases as early as 2008.

### C. Property Solutions Went On to Integrate with Yardi's Largest Customers, and Yardi Gained Both Profit and a Competitive Advantage.

108. Not only did Yardi aid Property Solutions in developing its custom interface to be used with Yardi's software databases, Yardi actually profited from its customers' adoption of Property Solutions' software. In March 2008, Yardi informed Property Solutions that it had begun charging customers a $2500 up-front fee and $250/per property annually to use Property Solutions' software if hosted on Yardi's servers. For the many property management companies with hundreds of properties, a per-property charge of $250 amounted to a substantial annual payment to Yardi. In addition, Property Solutions often referred customers interested in its portals and plug-in modules to Yardi and recommended that they use Yardi's property management software. Similarly, Yardi representatives referred customers to Property Solutions' portal products. Property Solutions' custom portals and plug-ins provided a great benefit to Yardi, as they allowed Yardi to offer features that were not available in Yardi's software but were offered by other property management vendors.

109. In 2008, Property Solutions contracted with an increasing number of customers interested in its portals and plug-in products. In September 2008, Property Solutions entered a license agreement to create custom integrations with Yardi's largest customer. Another mutual client emailed Property Solutions around that time stating that its integration was ready to go but that Yardi had informed him it was "waiting for approval from [Yardi founder and CEO] Anant Yardi." On information and belief, Anant Yardi personally approved the integrations developed by Property Solutions.

110. In December 2008, Yardi wrote to vendors, informing them that they needed to be SAS70 compliant to continue interfacing with Yardi products. SAS70

is an auditing standard used to verify that service providers have adequate controls and safeguards in place when they host or process data belonging to their customers. Yardi also communicated this information to several clients. To assure Yardi that its Yardi integrations were indeed SAS70 compliant and to avoid any disruptions for their mutual customers, Property Solutions executed a letter agreement dated January 8, 2009. A fully executed copy was received by Property Solutions on February 12, 2009. This letter provided confirmation of SAS70 compliance documentation, including a document providing the specifics of how Property Solutions integrates with Yardi's database.

111. By January 2009, Property Solutions had contracted with Yardi's first and second largest clients to develop custom integrations. On information and belief, although Yardi aggressively marketed its own portal products (introduced in or around 2007) and standard interfaces to its clients, Yardi nonetheless continued to lose a substantial number of its largest clients to Property Solutions' portal products. At that point, on information and belief, Yardi began to take note of the increasing success of Property Solutions' software products, which further illuminated the deficiencies in Yardi's products.

112. In February 2009, Property Solutions President Ben Zimmer emailed Yardi founder and CEO Anant Yardi to introduce himself and suggest a meeting to discuss a further strategic alliance between the two companies. The parties arranged a meeting in Santa Barbara with Mr. Yardi, Mr. Bateman, and Mr. Zimmer. At the meeting, Mr. Yardi asked how Property Solutions had created such successful interfaces with Yardi's software. Mr. Bateman responded that Property Solutions spent two years collaborating with Yardi developers, who provided technical support to Property Solutions' developers as they completed the project. Thus, at least by early 2009, Yardi's founder and CEO was aware that Property Solutions worked directly with Yardi developers, and that those developers

provided Property Solutions the details of the Voyager software necessary to complete its interface.

113. At the conclusion of the meeting, Mr. Yardi gave Mr. Bateman and Mr. Zimmer a demonstration of the newest Voyager features. Shortly after the meeting, Mr. Yardi emailed Property Solutions to discuss outstanding action items for the parties' further collaboration, and Property Solutions continued its work of developing integrations for an ever-increasing number of mutual Yardi/Property Solutions clients.

114. As early as 2009 through the present, Yardi employees regularly have assisted Property Solutions and their mutual customers with troubleshooting. It is to the benefit of Yardi to ensure that its largest clients, which are also employing Property Solutions' portals, plug-in products, and interfaces, do not have problems accessing Yardi's software or databases. Yardi has provided technical support to Property Solutions, which includes sending screen shots, detailed instructions, and database table field names from Yardi's Voyager software, on multiple occasions. Yardi also gave Property Solutions administrator rights to access Yardi-hosted interfaces for 120 large clients. Far from surreptitiously accessing Yardi's software, as Yardi alleges, Property Solutions' access was well known to Yardi personnel.

**D. Yardi and Property Solutions' Collaborative Relationship Eventually Soured as Yardi Made it More and More Difficult for Third Party Developers to Integrate.**

115. On January 24, 2011, Yardi filed a copyright infringement lawsuit against RealPage, Inc., another provider of property management software and associated plug-ins. After the lawsuit was filed, Yardi held a conference call with its third party integrators, including Property Solutions, to assure them that, in spite of the lawsuit, Yardi remained supportive of collaboration and integration.

116. Contrary to those assurances, however, Yardi began ramping up its efforts to discourage its customers from using Property Solutions' software,

erroneously informing customers that Property Solutions' interfaces with Yardi's software presented security problems, and that they did not meet Yardi standards. In fact, on information and belief, Yardi began implementing tactics designed to prevent its customers from freely integrating with all third party vendors, not just Property Solutions.

117. In August 2012, Yardi wrote to customers indicating that it would no longer support Property Solutions' custom interfaces, which it used to connect its portals and plug-in modules to Yardi's database. Yardi erroneously claimed Property Solutions' custom interfaces created security issues for customers' data, and encouraged customers to consider Yardi's standard interfaces. This announcement was not well-received by mutual customers of Property Solutions and Yardi, as they wanted the additional capabilities afforded them by Property Solutions' custom integration with Yardi's software, which the Yardi standard interfaces could not provide. On information and belief, many of these customers reached out to Yardi with concerns about the potential transition away from Property Solutions' custom integration.

118. Because of its customers' concern, Yardi asked Property Solutions to perform a "gap analysis" to determine what features of Property Solutions' custom interfaces would be lost with the Yardi standard interface. Property Solutions performed that analysis, which detailed the advances Yardi would need to make in order to close the substantial gaps in functionality, and provided the analysis to Yardi. On information and belief, Yardi requested the gap analysis in order to use it to incorporate Property Solutions features into its own products.

119. In early 2012, Yardi began communicating that it would start charging vendors including Property Solutions $25,000 to use each of seven Yardi standard interfaces (for a total of $175,000 per year, per vendor, for access to all of Yardi's standard interfaces).

120. To date, however, Yardi still has not forced a single customer to move to Yardi's standard interfaces. In fact, there are over 200 mutual Property Solutions/Yardi customers still using Property Solutions' custom interfaces. In January 2013, Yardi agreed in writing to allow at least one mutual Yardi/Property Solutions customer to continue using Property Solutions' custom interfaces. Despite its allegations in this lawsuit, Yardi continues to provide technical support to Property Solutions and its clients to ensure the continued functioning of their custom integrations, which Yardi now claims are the result of copyright infringement and/or misappropriation of trade secrets. At least as recently as mid-November 2013, after Yardi filed this lawsuit, Yardi sent screenshots and other Voyager information to Property Solutions and a mutual client to aid in troubleshooting. Yardi also continues to publicly communicate its intention to continue supporting the Property Solutions custom interface. Yardi's actions make clear that without Property Solutions' custom interfaces, which facilitate the use of Property Solutions' portals and plug-in modules, Yardi believes it likely would lose customers to other property management software providers.

121. Having realized that Property Solutions' custom interfaces, the development of which Yardi encouraged and facilitated, are far superior to its own, and that none of its measures to encourage clients to use Yardi interfaces have succeeded, Yardi has filed this lawsuit in an attempt to stifle competition.

### E. Property Solutions Independently Developed its Entrata Property Management Software.

122. Since its founding, Property Solutions has continued to develop its own comprehensive property management software, including providing support since 2003 for dozens of clients already using Resident Works as their primary solution for leasing and rents. Property Solutions has simultaneously continued designing add-ons for existing property management software, such as Yardi's Voyager, including a wide variety of plug-in modules, such as check scanning,

mobile applications, the ability to aggregate data to internet listing services, renter's insurance applications, call center services, credit screening and online lease execution. After spending many years working closely with other property management software options and seeing the drawbacks of clumsy interfaces, cumbersome workflow, and limited browser selection common in such products, Property Solutions believed that it could do better.

123. In 2012, Property Solutions re-branded its property management software from Resident Works to Entrata and announced its plans to enhance its property management software functionality. The goal of the development of Entrata was to create a product unlike any on the market. The user interface would be highly user friendly, and the software would incorporate the core (and largely standardized) accounting functions common to all property management software, but also provide the same selection of tools and ease of use that made Property Solutions' portals and plug-in products for third party software so popular.

124. During that process, like any company attempting to develop a new product, Property Solutions looked at each of its competitors to determine how their software could be improved upon. Property Solutions did not, however, attempt to access any of those companies' confidential information, such as source code, database tables, schema, or any other aspects of their software, nor did Property Solutions copy or otherwise incorporate any such information, during the development of Entrata.

125. Entrata is the only property management software on the market that provides comprehensive accounting services and built-in applications on a single platform using a multi-tenant architecture. Unlike Yardi's Voyager, for example, Entrata requires only one log-in, and uses only one database. Also unlike Voyager, Entrata is device agnostic, meaning it can be used on any browser, operating system, or device, and it has an open platform that allows third parties to easily integrate with it. Entrata is written in a different programming language than

Voyager. Entrata is written in PHP while, on information and belief, Voyager is written in .NET.

126. In June 2012, Property Solutions announced the launch of its Entrata Property Management Software at the National Apartment Association Educational Conference (NAA). By March of 2013, Property Solutions had successfully piloted the beta version of Entrata across more than 40 companies.

127. A year after its release, Entrata has become the fastest-growing property management software in the industry. Entrata's success is due in large part to the fact that it is not based on legacy programs. Property Solutions' goal was to create a product unlike any other—not to replicate an existing product such as Voyager. Instead, Entrata was designed from the ground up to provide the modern tools and functionality necessary to meet the changing needs of today's property management industry.

**F. Communications Prior to the Filing of Yardi's Lawsuit.**

128. In early 2012, Yardi emailed Property Solutions and invited its executives to travel to Santa Barbara for a meeting. The email stated that Yardi was looking for information relevant to its recently initiated litigation against RealPage, and said that Yardi also wanted to discuss potential "positive business opportunities." Upon arrival, Mr. Zimmer was surprised to learn that Yardi had its lawyer present. In addition, the same day of the meeting, the venue of the meeting was changed from Yardi's corporate headquarters to the offices of Brownstein Hyatt Farber Shreck, LLP, the firm representing Yardi in this lawsuit.

129. At the meeting, Yardi again asked how Property Solutions had been able to develop its interfaces with Yardi Voyager, and Mr. Zimmer responded—just as he had three years earlier—that Property Solutions developed its interfaces through collaboration with Yardi developers since 2007.

130. Yardi then asked Mr. Zimmer whether Property Solutions was developing its own property management software. Because Property Solutions

had no duty to inform Yardi about its confidential development initiatives, Mr. Zimmer answered that the development of property management software was part of Property Solutions' 2003 business plan and that it pursued property management software for a period of years, but had been focusing its efforts in recent years on other solutions. Mr. Zimmer felt he had been ambushed, that the questioning was improper, and that he was being implicitly threatened by Yardi at this meeting.

131. One week later, on February 13, 2012, the parties held a conference call. Yardi again asked Property Solutions how it was able to develop and test its products, and Property Solutions again explained that Yardi developers facilitated Property Solutions' integration and had been extremely helpful both in the early stages of development and in troubleshooting. Contrary to Yardi's assertions, Property Solutions also informed Yardi that it once had a copy of Yardi's software, but could not confirm whether it was Genesis or Voyager. Property Solutions informed Yardi, however, that it had not accessed or used Yardi software's source code in the process of designing and building its interfaces. Yardi nonetheless began sending threatening letters to Property Solutions, and eventually filed this lawsuit.

132. Even as it alleged Property Solutions' interfaces infringed its Voyager software copyrights, Yardi was proposing an API agreement with Property Solutions that would allow Yardi to continue offering Property Solutions portals and plug-in modules to its clients. Despite the filing of this lawsuit, Yardi is still trying to conclude that agreement. Yardi thus has acknowledged the value of Property Solutions' products to its customers, many of whom, on information and belief, Yardi fears it might lose in the event it can no longer offer Property Solutions' custom interfaces. Yardi has filed this lawsuit in an attempt to stifle legitimate competition, while at the same time trying to retain and further profit from the Property Solutions software it alleges is the result of copyright infringement and trade secret misappropriation.

**FIRST COUNTERCLAIM**
**(Declaratory Judgment of No Copyright Infringement)**

133. Property Solutions incorporates by reference its allegations in paragraphs 1 to 130, above.

134. Yardi alleges that Property Solutions has infringed Yardi's copyrights during development of its interfaces for Yardi's property management software and during development of its Entrata software.

135. Property Solutions denies that Yardi has any valid and protectable copyrights. Property Solutions also denies that it has infringed any protectable expression under the Copyright Act, 17 U.S.C. § 101 et seq.

136. There exists an actual and justiciable controversy between Property Solutions and Yardi with respect to the infringement of any valid copyright interest Yardi may possess.

137. Property Solutions seeks a declaratory judgment that it has not infringed any valid Yardi copyrights. A judicial declaration is necessary and appropriate at this time so that Property Solutions can ascertain its rights.

**SECOND COUNTERCLAIM**
**(Declaratory Judgment of No Misappropriation of Trade Secrets)**

138. Property Solutions incorporates by reference its allegations in paragraphs 1 to 135, above.

139. Yardi alleges that Property Solutions has misappropriated Yardi's trade secrets to develop its interfaces for Yardi software and its Entrata software.

140. Property Solutions denies that it has misappropriated any Yardi trade secrets. Property Solutions further alleges that Yardi has not taken adequate steps to protect its alleged trade secrets.

141. There exists an actual and justiciable controversy between Property Solutions and Yardi with respect to the alleged misappropriation of any trade secrets Yardi might possess.

142. Property Solutions seeks a declaratory judgment that it has not misappropriated any alleged Yardi trade secrets. A judicial declaration is necessary and appropriate at this time so that Property Solutions can ascertain its rights.

**PRAYER FOR RELIEF**

WHEREFORE, defendant Property Solutions prays for judgment as follows:

a. That Property Solutions does not infringe any valid copyright owned by Yardi;

b. That Property Solutions has not misappropriated any of Yardi's alleged trade secrets;

c. That the Complaint be dismissed with prejudice and that judgment on the Complaint, and each and every claim for relief therein, be entered in favor of Property Solutions and against Yardi;

d. That Yardi takes nothing by this suit;

e. That Property Solutions be awarded its attorneys' fees and costs incurred herein; and

f. For such other and further relief as the Court may deem proper.

Dated: April 18, 2014

MORRISON & FOERSTER LLP

By: /s/ Eric M. Acker
Eric M. Acker

Attorneys for Defendant and Counterclaimant
PROPERTY SOLUTIONS INTERNATIONAL, INC.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b) and Local Rule 38-1, Property Solutions International, Inc. demands a trial by jury on all issues so triable.

Dated: April 18, 2014

MORRISON & FOERSTER LLP

By: /s/ Eric M. Acker
Eric M. Acker

Attorneys for Defendant and Counterclaimant
PROPERTY SOLUTIONS INTERNATIONAL, INC.

## CERTIFICATE OF SERVICE

I certify that on April 18, 2014, I caused a copy of the foregoing to be filed electronically and that the document is available for viewing and downloading from the ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Executed this 18th day of April, 2014 at San Diego, California.

By: /s/ Eric M. Acker
Eric M. Acker