MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
Morrison & Foerster LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  415.268.7000
Facsimile:   415.268.7522

ERIC M. ACKER (CA SBN 135805)
EAcker@mofo.com
CHRISTIAN G. ANDREU-VON EUW (CA SBN 265360)
christian@mofo.com
MARY PRENDERGAST (CA SBN 272737)
MPrendergast@mofo.com
Morrison & Foerster LLP
12531 High Bluff Drive
San Diego, California  92130-2040
Telephone:  858.720.5100
Facsimile:   858.720.5125

Attorneys for Defendant/Counterclaimant
PROPERTY SOLUTIONS INTERNATIONAL, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YARDI SYSTEMS, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PROPERTY SOLUTIONS INTERNATIONAL, INC.,<br><br>　　　　　Defendant.<br><br>PROPERTY SOLUTIONS INTERNATIONAL, INC.,<br><br>　　　　　Counterclaimant,<br><br>　　v.<br><br>YARDI SYSTEMS, INC.,<br><br>　　　　　Counterdefendant. | **DISCOVERY MATTER**<br><br>Case No. 2:13-CV-07764-FMO-CW<br><br>**PROPERTY SOLUTIONS INTERNATIONAL, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>**Hearing:** Dec. 16, 2014<br>**Time:**　　10:00 a.m.<br>**Ctrm:**　　640<br>**Before:**　Mag. Judge Carla Woehrle<br><br>**Discovery Cutoff:**　　Dec. 19, 2014<br>**Pretrial Conference:**　May 29, 2015<br>**Trial Date:**　　　　　Jun. 16, 2015 |

## I.    INTRODUCTION

Yardi focuses on PSI's access to the Voyager software, and argues that this somehow absolves Yardi of its responsibility to comply with its discovery obligations.  But Yardi ignores the fact that for years Yardi itself provided PSI with test Voyager databases, instructed clients to provide PSI with copies of Voyager databases, and told PSI to work with mutual clients to set up and troubleshoot PSI's custom integration with the Voyager software.  PSI is entitled to the discovery it needs to explore Yardi's awareness of (or willful blindness to) PSI's and other companies' access to the material Yardi now includes in its expansive list of alleged trade secrets.[1]  But Yardi argues that it must only produce the evidence it needs for its case-in-chief, while ignoring requests for evidence that does not help its case.  That is incorrect.  Yardi must produce the evidence that establishes PSI's defenses.  Further, Yardi's incorrect assumption that PSI's admission of access to the Voyager software establishes liability does not absolve Yardi of its obligation to prove its damages.  Yardi argues that PSI should have purchased thousands of Voyager licenses.  Yardi must therefore give PSI the documents it needs to rebut Yardi's argument and determine the cost of a hypothetical license to PSI.

## II.    LICENSE AGREEMENTS FOR VOYAGER USERS

PSI seeks copies of Yardi's license agreements to determine the price and terms of the licenses Yardi alleges PSI would have had to purchase from Yardi.  Instead of directly addressing the relevance of PSI's request, Yardi focuses on the fact that PSI initially withdrew its request for actual license agreements.  But Yardi fails to acknowledge the reason PSI was forced to renew its request: Yardi served revised Rule 26(a)(1) disclosures in which it included for the first time a demand

---

[1] Yardi tries to downplay the breadth of its trade secret claim, arguing for the first time that it only claims "the Voyager software it its entirety" and does not claim "any individual element" of Voyager. (JS at 5:28-6:3)  On the contrary, Yardi claims Voyager in its entirety ***and*** twenty-two individual Voyager elements.  (*See* AvE Decl. Ex. 6, ¶¶23, 1-22.)

that PSI buy thousands of Voyager licenses.  In response, PSI renewed its request for information needed to respond to the new demand: actual license agreements showing actual terms and prices for those licenses.

Yardi argues it need not produce actual agreements because it produced some "template" agreements that have an unspecified relation[2] to actual agreements.  (JS[3] at 9:19.)  Yardi's self-serving selection of "template" agreements is not enough. Yardi admits its different clients are given different terms (Schock Decl.[4] ¶¶ 6, 9) and admits it does not track the terms of those agreements in any systematic way. (JS at 18:14-15.)  In other words, the only way for PSI to determine the appropriate pricing and terms for a hypothetical license to PSI is to see the actual licenses.

Yardi next argues that licenses to property management companies are not relevant because PSI is not a property management company.  (JS at 10:12-16.) Yardi therefore admits that the circumstances of a particular licensee are relevant to the terms they receive, making "standard terms" and "templates" insufficient.  And more importantly, Yardi made such agreements relevant by demanding that PSI pay the "standard" prices it charges property management companies.

Finally, Yardi argues that PSI is not entitled to know the actual price of a Voyager license (and implicitly admits the "standard" price it seeks is elevated) because it intends to charge PSI more than it charges its other clients (JS at 11:21-23).  Yardi's intent to seek more than the true price of a Voyager license does not absolve it of its obligation to allow PSI to determine the true price.

## III.   DEVELOPER LICENSE AGREEMENTS

Yardi's arguments about developer license agreements, like its arguments about marketing materials (*see* § V, *infra*), are contradicted by its own website.

---

[2] Yardi's counsel declares he is "informed" (by an unidentified declarant) that Yardi's actual agreements are "based on" the template agreements.  (Dkt No. 62-3 ¶ 6)  He does not say how actual agreements differ from the template agreements.

[3] Joint Stipulation Re: Property Solutions' Motion to Compel.  (Dkt. No. 63-1.)

[4] Declaration of Karl Schock in Opposition to Motion to Compel.  (Dkt. No. 63-3.)

Supplemental MPA ISO Motion to Compel
Case No. 2:13-cv-07764 FMO (CWx)

sd-653015

1 Yardi's counsel declares that he has "been informed [by an unidentified declarant]
2 that Yardi does not license the Voyager software to third-party developers whose
3 products interface with the Voyager software." (Schock Decl. ¶ 7.)  But, Yardi's
4 own website states that "third-party vendors" can pay an "annual program
5 membership fee" in exchange for benefits that include "_access to Voyager_ to test
6 and validate [their] product[s] with Yardi's standard interface." (AvE Supp. Decl.,[5]
7 Ex. 1.)  PSI is accused of accessing Voyager to test and validate PSI's products.  If
8 Yardi intends to demand a license fee for that use, it must produce the agreements it
9 made with third-party developers that access Voyager for the exact same purpose.

## IV.   SALES AND REVENUE FOR VOYAGER

11       Yardi's response to PSI's request for information it needs to understand the
12 sales and revenue information Yardi provided shows the very reason PSI needs that
13 information.  In footnote 11 of its response, Yardi admits—for the first time—that
14 "the revenue figures that Yardi provided . . . excluded . . . revenue from the sale of
15 the Voyager software for use exclusively for specialty/niche purposes."  Yardi, who
16 admitted PSI would be considered a specialty/niche customer (_see_ JS at 10:12-16),
17 excluded the sources of revenue that could be most relevant.  But PSI did not know
18 it was missing information about specialty agreements until it received Yardi's
19 response to this motion because Yardi's disclosures had no contextual information.

## V.   MARKETING MATERIALS

21       Despite claiming that its "screen layouts" and "screen configurations" are
22 trade secrets (_see_ JS at 19:6-8) and being presented with evidence that it regularly
23 discloses layouts and configurations in its marketing materials (JS at 19:4-14),
24 Yardi argues that PSI's request for marketing materials is made "without _**any**_
25 factual underpinning." (JS at 20:9-13 (emphasis in original).)  Yardi supports that
26 extreme claim by arguing that the layouts and configurations found in the

27

28

---

[5] Supplemental Declaration of Christian G. Andreu-von Euw, filed concurrently.

marketing materials PSI presented are different than the layouts and configurations Yardi now claims as its trade secrets. (JS at 21:1-2.) Even if that were true, it would be of no consequence. Yardi's practice of regularly disclosing screen configurations and layouts in marketing materials shows that PSI's request is reasonably calculated to lead to admissible evidence.

Yardi fails to address its pattern of disclosing screen layouts in marketing materials and instead characterizes PSI's belief that Yardi disclosed trade secrets in marketing materials as a "baseless hope." (JS at 21:19.) In short, Yardi believes PSI is not entitled to discovery of Yardi's marketing materials until it **proves** those materials disclose trade secrets. That is not the law. Nevertheless, PSI can meet Yardi's demand: one of the **exact** screen configurations Yardi now claims as a trade secret is found on Yardi's **current** website. (AvE Supp. Decl., Exs. 2-3.)

Furthermore, even if Yardi never disclosed a single allegedly secret screen layout in its marketing materials, those materials would still be relevant to its other alleged secrets.[6] For example, Yardi's marketing materials also disclose accounting terms that Yardi now claims are trade secrets. (AvE Supp. Decl., ¶ 4.) Yardi's materials also likely disclose Yardi's "[c]ompilations of the property management industry's collective needs and preferences . . . _as such information is reflected in the inclusion of such functionalities in Yardi's Voyager software_," which Yardi also claims are secret. (_See_ AvE Decl., Ex. 6 ¶ 22 (emphasis added).) Marketing materials are designed to show which features are included in Voyager and designed to show customers that the features meet their needs and preferences.

Yardi also overstates the burden of producing marketing materials.[7] They are

---

[6] Yardi argues that "most of Yardi's claimed trade secrets **could not** be revealed in printed marketing." (JS at 21 (original emphasis.)) This is demonstrably incorrect as to several of Yardi's alleged secrets. Moreover, Yardi cannot withhold discovery, and prevent PSI from testing whether such secrets are disclosed, by simply asserting its own belief that such a disclosure is not possible.

[7] Yardi admits its marketing materials are stored in particular locations and estimates one such archive has 25,000 documents (about 15% of PSI's production).

Supplemental MPA ISO Motion to Compel
Case No. 2:13-cv-07764 FMO (CWx)

sd-653015

1   public disclosures (which are not privileged) that are segregated in particular

2   locations.  Yardi can easily locate the marketing materials, produce them *en-masse*,

3   and shift the burden of review to PSI.  Given the broad scope of Yardi's trade secret

4   claims, most, if not all, marketing documents likely are relevant.

## VI.   COMMUNICATIONS WITH THIRD-PARTY DEVELOPERS

6           Yardi admits it already identified and segregated most of its communications

7   with third-party developers (JS at 32:9-12) and does not dispute that it shared its

8   alleged secrets with third-party developers.[8]  Instead, Yardi argues that it need not

9   produce those disclosures because it produced non-disclosure agreements with

10  *some* of those developers.  (*See* JS 31:15-18.)  Yardi's intent to argue that its trade

11  secret disclosures are protected by non-disclosure agreements does not absolve it of

12  its obligation to produce *both* the disclosures and the non-disclosure agreements so

13  that PSI can explore those disclosures and test Yardi's allegations.

## VII.  DOCUMENTS ABOUT PSI

15          Yardi contradicts its earlier statements (*see* AvE Decl. Ex. 8, p. 5) and asserts

16  that it "has not withheld relevant documents through some subjective evaluation of

17  whether PSI was 'substantively mentioned.'"  (JS 42:9-11)  But, Yardi fails to

18  articulate the subjective evaluation that it used to determine which documents to

19  withhold.  Yardi implies it may be withholding "high-level strategic documents"

20  (JS 41 at 14) without explaining why those documents are not relevant to Yardi's

21  knowledge of PSI's actions (or why they would not be protected by the protective

22  order in this action) and describes low-level documents it withheld that are relevant

23  to Yardi's knowledge of PSI's actions (such as documents describing its customers'

24  use of PSI products that connect to Voyager).  Yardi's documents about PSI must

25  be produced because Yardi's knowledge of PSI's actions is at the heart of this case.

26  _____

[8] Yardi describes "technical assistance" to third party developers but, instead of
27  denying that trade secrets were disclosed in those communications, it argues that
    not ***all*** of the communications are relevant.  (*See* JS at 31:9-10, 18-21.)

28

1

2    Dated:  December 1, 2014          MORRISON & FOERSTER LLP

3

4                                      By: _____/s Christian G. Andreu-von Euw_____
                                           Christian G. Andreu-von Euw
5
                                       Attorneys for Defendant/Counterclaimant
6                                      PROPERTY SOLUTIONS
                                       INTERNATIONAL, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Supplemental MPA ISO Motion to Compel
Case No. 2:13-cv-07764 FMO (CWx)

sd-653015

**CERTIFICATE OF SERVICE**

I certify that on December 1, 2014, I caused a copy of the foregoing to be filed electronically and that the document is available for viewing and downloading from the ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Executed this 1st day of December 2014, at San Diego, California.

By:  /s/  Christian G. Andreu-von Euw
Christian G. Andreu-von Euw

Supplemental MPA ISO Motion to Compel
Case No. 2:13-cv-07764 FMO (CWx)

sd-653015